## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAULA KAY MEREDITH,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-815
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 12), the Commissioner's response in opposition (Doc. 20), and plaintiff's reply

memorandum. (Doc. 21).

## I. Procedural Background

Plaintiff filed an application for DIB in March 2006, alleging disability since November

14, 2005 due to chronic fatigue, depression, anxiety, panic attacks, hypertensive cardiovascular

disease/hypertension, peptic ulcer disease, Tourette's syndrome[1], and acid reflux disease.

Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel,

requested and was granted a de novo hearing before ALJ Donald Smith. Plaintiff and a

vocational expert (VE) appeared and testified at the ALJ hearing. On January 15, 2009, the ALJ

issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the

---

[1]Tourette's syndrome is a neurological disorder characterized by repetitive, stereotyped, involuntary
movements and vocalizations called tics. *See* http://www.ninds.nih.gov/disorders/tourette/detail_tourette.htm
#189333231 (last visited Feb. 8, 2012).

Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Medical Evidence

Plaintiff's treating gastroenterologist, George Waissbluth, M.D., reported that he had treated plaintiff since 2000, "mostly [for] symptoms attributable to irritable bowel syndrome." (Tr. 199-200). An upper GI endoscopy performed on October 20, 2005, showed severe duodenitis with duodenal ulcer. (Tr. 208). On March 28, 2006, Dr. Waissbluth noted that plaintiff's ulcer symptoms had resolved. (Tr. 206). It was noted that she was on Cymbalta and Risperdal for her Tourette's syndrome and depression, which might affect her stomach. *Id.*

In May 2006, Dr. Waissbluth diagnosed duodenitis with duodenal ulcers and irritable bowel syndrome. (Tr. 201). Clinical findings were abdominal cramps and pain. (Tr. 201). Dr. Waissbluth opined that plaintiff could lift and/or carry up to twenty pounds frequently; would likely be absent from work "less than once a month"; and would require ready access to a restroom once a shift for 10 minutes at a time. (Tr. 201-05). He also opined that "[f]rom the point of view of GI [gastrointestinal] she is not a disability-type patient but she needs to be treated more for psychological problems than anything else," and that "from GI point of view IBS and DU are not disability issues." (emphasis in original) (Tr. 199, 205).

In June 2006, plaintiff's internist, Robert Gerke, M.D., reported that plaintiff's diagnoses included Tourette's syndrome, depression, hypertension, and low back pain. (Tr. 263). Dr. Gerke stated that "[f]or the past several years, she has been seen mostly for anxiety and depression." (Tr. 263). He also reported that she had difficulty sleeping and difficulty with concentration. Dr. Gerke stated that plaintiff had a history of Tourette's syndrome for which she

2

was "on multiple medications and unable to tolerate." (Tr. 263). Dr. Gerke also noted that plaintiff "has felt she cannot work due to significant fatigue related to depression, as well as generalized fatigue." (Tr. 263). Plaintiff had recurrent bouts of upper respiratory infections and nausea, vomiting, and diarrhea. Her medications included Verelan, Reglan, Alprazolam, Lunesta, and Protonix.[2] Id. She was found to be compliant with treatment. (Tr. 264).

Dr. Gerke completed a Multiple Impairment Questionnaire dated June 21, 2006. (Tr. 252-259). He diagnosed Tourette's syndrome, anxiety/depression, and gastroesophageal reflux disease (GERD). (Tr. 252). Clinical findings included extreme fatigue, inability to sleep, and social stressors. Id. Plaintiff's primary symptoms were extreme fatigue and anxiety and severe GERD. (Tr. 253). Dr. Gerke opined that plaintiff was able to sit 8 hours a day; stand/walk 2 hours total out of an 8-hour day; occasionally lift and carry up to 50 pounds; and frequently lift and carry up to 10 pounds. (Tr. 254-55). Dr. Gerke opined that plaintiff's symptoms were "constantly" severe enough to interfere with her attention and concentration. (Tr. 257). She was found incapable of handling even low stress work. Id. Dr. Gerke estimated that plaintiff would be absent from work, on the average, more than three times a month. (Tr. 258).

In June 2006, psychiatrist Irfan Dahar, M.D., completed a Psychiatric/Psychological Impairment Questionnaire after examining plaintiff on one occasion on March 27, 2006. (Tr. 319-26). Dr. Dahar diagnosed chronic anxiety and depression. Her GAF[3] score was 50 and her

---

[2]Verelan is used to treat high blood pressure; Reglan and Protonix are used to treat gastroesophageal reflux; Alprazolam (Xanax) is indicated for the management of anxiety; and Lunesta is indicated for the treatment of insomnia. See www.rxlist.com (Last visited on 2/19/2012).

[3]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." Id. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with

DSM IV diagnoses included generalized anxiety disorder and panic disorder. Clinical findings included occasional poor memory, sleep disturbances, mood disturbance, emotional lability at times, pervasive loss of interest, feelings of guilt/worthlessness, loosening of associations, compulsions, persistent irrational fears, generalized persistent anxiety, somatization unexplained by organic disturbances, occasional hostility and irritability, and pathological dependence and passivity. (Tr. 320). Plaintiff's primary symptoms were worrying, persistent nervousness, feelings of guilt over not working, and difficulty focusing. (Tr. 321). Plaintiff reported poor memory "sometimes," jerking during her sleep, panic attacks three times per week, hostility and irritability "sometimes," and agitation when around a lot of people. (Tr. 320). Dr. Dahar opined that in 19 areas of functioning, plaintiff had no evidence of limitation in six areas, mild limitations in twelve areas, and moderate limitations in one area: the ability to complete a normal workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 322-24). Dr. Dahar also explained that his assessment was based on plaintiff's "reports plus our diagnoses and therapy findings . . . ." (Tr. 325). Dr. Dahar opined that plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from that situation and/or experience exacerbation of signs and symptoms when she felt anxious. (Tr. 324). Her medications were Cymbalta and Risperdal. *Id.* Dr. Dahar noted that plaintiff's psychiatric symptoms also exacerbated her Tourette's syndrome, which caused muscle pain, and

---

clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *See* DSM-IV at 32. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id.* The next higher category, for scores of 61 to 70, refers to an individual with "some mild" symptoms who is "generally functioning pretty well." *Id.*

GERD. (Tr. 325). Dr. Dahar opined that plaintiff was incapable of even low stress work and that she would be absent from work, on the average, more than three times a month. (Tr. 325-326).

In August 2006, Dr. Gerke reported that plaintiff "is treated for severe anxiety and depression. This exacerbates her Tourette's syndrome." (Tr. 261, 341). He noted that she was on "multiple medications," and that plaintiff could be "fatigued and sleepy from some of these medicines." *Id.* Dr. Gerke concluded: "Her activity limitations are based on her extreme fatigue and anxiety. This is unpredictable but she missed work more than [three times per] week the past several years." *Id.*

On August 24, 2006, plaintiff was seen by Dr. Dahar for a follow-up appointment. (Tr. 317). She complained of depression, anxiety, mood swings, panic attacks, and racing thoughts. She had 2-3 panic attacks per week. She participated in therapy with the doctor. He diagnosed generalized anxiety disorder and panic disorder. Dr. Dahar increased her dose of Xanax. *Id.* No changes were found at subsequent follow-ups with Dr. Dahar on October 24, 2006 (Tr. 316) and January 23, 2007. (Tr. 315).

In a report dated December 8, 2006 to plaintiff's employer, Dr. Gerke opined that plaintiff was "permanently disabled" and was incapable of minimum sedentary activity. (Tr. 343).

On December 27, 2006, plaintiff was examined by consulting psychologist Richard Sexton, Ph.D. (Tr. 278-82). On examination, plaintiff's speech was found to be somewhat impulsive and pressured. (Tr. 279). A mental status examination also revealed limited and flat affect, poor sleep, depression, frequent periods of tearfulness, reduced energy, feelings of guilt,

5

hopelessness, and helplessness, and panic attacks on a daily basis associated with feelings of doom, heightened anxiety, shortness of breath, and racing heart. *Id.* Dr. Sexton diagnosed mood disorder, low average intelligence, hypertension, Tourette's syndrome, and acid reflux with ulcers. (Tr. 281). Her GAF score was 55 to 59. *Id.* Dr. Sexton opined that plaintiff was capable of simple, repetitive-type tasks; she could understand, recall, and carry out simple instructions; her ability to interact with co-workers and supervisors was fair; and her ability to tolerate daily stress and pressures of a work environment was fair. (Tr. 282).

In January 2007, state agency psychologist Caroline Lewin, Ph.D., reviewed the file and opined that plaintiff's mental impairments were not severe. Dr. Lewin opined that plaintiff had no more than mild restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, and that she had not had any episodes of decompensation of extended duration. (Tr. 299-312). She also noted that Dr. Sexton's consultative evaluation could "be given considerable weight." (Tr. 311).

On January 16, 2008, plaintiff saw Dr. Gerke for a follow-up visit and reported an inability to afford her medications, frequent headaches, and increased Tourette's symptoms with stress. (Tr. 339).

On April 25, 2008, Dr. Gerke noted that plaintiff "is here for disability forms. She has problems due to Tourette's, anxiety and fatigue." (Tr. 337). She was assessed with "fatigue." (Tr. 337). That same date, Dr. Gerke completed a second Multiple Impairment Questionnaire. (Tr. 328-335). The doctor reported essentially unchanged findings from his prior questionnaire, including extreme fatigue, anxiety, and frequent outbursts. (Tr. 329). In contrast to his earlier Questionnaire, Dr. Gerke opined that plaintiff was unable to sit for even 1 hour total or

stand/walk for 1 hour total during an 8-hour workday. (Tr. 330). Also, Dr. Gerke opined that

plaintiff could frequently lift and carry weights over 50 pounds. (Tr. 331). He again opined that

plaintiff was unable to do a full time competitive job that requires activity on a sustained basis

and was incapable of even low stress jobs as her "Tourette's acts up." (Tr. 333). Dr. Gerke

opined that plaintiff would miss more than three days of work per month. (Tr. 334).[4]

## III. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment - *i.e.*, an impairment that significantly limits his or her physical
or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

---

[4]The additional records and reports from Dr. Gerke which post-date the ALJ's decision may not be
considered by the Court in its review of the ALJ's decision. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir.
2007).

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 1, 2010 (Exhibit 4D).

2. The claimant has not engaged in substantial gainful activity since November 14, 2005, the alleged onset date (20 CFR 404.1571 *et seq.).*

3. The claimant has the following severe impairments: irritable bowel syndrome (Exhibit 2F), Tourette's syndrome, degenerative disc disease (Exhibits 3F; 9F), mood disorder, depression, anxiety, and panic disorder (Exhibits 3F; 7F; 9F)(20 CFR 404.1521 *et seq.).*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: limited to lifting 20 pounds occasionally and 10 pounds frequently; must have ready access to a restroom; will need one unscheduled break of 10 minutes per shift each day to use the restroom; will be absent from work one day each month; can do simple, routine, repetitive tasks; can handle ordinary and routine changes in work setting or duties; no rapid production rate pace; and limited to occasional interaction with coworkers, supervisors, and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).[5]

7. The claimant was . . . 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).[6]

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2005 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[5] Plaintiff has past relevant work as a packer, which is classified as medium and unskilled. (Tr. 24).

[6] Plaintiff completed the eleventh grade and never obtained a GED. (Tr. 31).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ failed to follow the treating physician rule; (2) the ALJ failed to properly evaluate plaintiff's credibility; (3) the ALJ relied on flawed vocational expert testimony.

### 1. The ALJ did not err in weighing the opinions of the treating physicians.

Plaintiff claims that the ALJ failed to follow the rules for weighing the opinions of a treating physician and erred by failing to give "controlling weight" to plaintiff's treating internist, Dr. Gerke. Plaintiff also contends the ALJ erred by failing to give good reasons for rejecting Dr.

10

Gerke's opinions and by not weighing his opinions under the factors set forth in 20 C.F.R. §
404.1527(d)(2)-(6).

The treating physician rule mandates that the ALJ "will" give a treating source's opinion
controlling weight if it "is well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other substantial evidence in [the
claimant's] case record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. §
404.1527(d)(2)). If the ALJ declines to give a treating source's opinion controlling weight, the
ALJ must then balance the following factors to determine what weight to give it: "the length of
the treatment relationship and the frequency of examination, the nature and extent of the
treatment relationship, supportability of the opinion, consistency of the opinion with the record as
a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §
404.1527(d)(2)).

"Importantly, the Commissioner imposes on its decision makers a clear duty to
'always give good reasons in [the] notice of determination or decision for the weight [given a]
treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)). Those
reasons must be "supported by the evidence in the case record, and must be sufficiently specific
to make clear to any subsequent reviewers the weight the adjudicator gave to the treating
source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p). "This
requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Id.*
(citing *Wilson*, 378 F.3d at 544). The requirement also safeguards a reviewing court's time by
permitting meaningful and efficient review of the ALJ's application of the treating physician
rule. *Id.* at 938 (citing *Wilson*, 378 F.3d at 544-45).

11

The ALJ determined that Dr. Gerke's opinion was accepted to the extent it was consistent with an RFC for light work. However, the ALJ rejected the additional restrictions imposed by Dr. Gerke's functional capacity assessments, finding that the physical findings documented in the record do not support Dr. Gerke's additional limitations on sitting, standing, walking or postural activity. (Tr. 23). The ALJ also noted that there was little objective evidence of any functional impairment that would completely prevent plaintiff from working and that Dr. Gerke's assessments were inconsistent with each other. (Tr. 22). The ALJ noted that it appeared plaintiff's diagnosis of Tourette's syndrome was carried forward in the record by history and that Dr. Gerke admitted there was no test data available to support plaintiff's diagnoses of Tourette's syndrome, generalized anxiety disorder, and depression. (Tr. 22, citing Tr. 329). In addition, the ALJ noted that Dr. Gerke stated plaintiff was followed by a neurologist, but the record fails to document any neurological follow up. (Tr. 22). Finally, the ALJ stated, "Dr. Gerke noted the claimant's poor stress tolerance on multiple occasions, and stated that some of her medications could cause drowsiness, but acknowledged emotional overlay contributing to her primary symptoms of fatigue and anxiety (Exhibit 8F at 3, 7)." (Tr. 22).

The ALJ's decision to discount Dr. Gerke's opinions is supported by substantial evidence. Dr. Gerke's opinions are not entitled to controlling weight as they are internally inconsistent and not well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Cole*, 661 F.3d at 937. Nor are the opinions entitled to substantial weight for the reasons posited by the ALJ and as explained below.

The ALJ reasonably determined that Dr. Gerke's opinions on the severity of plaintiff's impairments were inconsistent. As the ALJ noted, Dr. Gerke opined in June 2006 that plaintiff

12

had the capacity for sedentary to light work activity: she was able to sit 8 hours a day; stand/walk 2 hours total out of an 8-hour day; occasionally lift and carry up to 50 pounds; and frequently lift and carry up to 10 pounds. (Tr. 254-55). Six months later, Dr. Gerke opined that plaintiff was "permanently disabled" and was incapable of even minimum sedentary activity. (Tr. 343). In contrast to both of these opinions, Dr. Gerke then opined in April 2008 that plaintiff could not sit for even one hour in an eight-hour work day and could stand/walk for a maximum of one hour in an eight-hour workday (Tr. 330), but was now inexplicably capable of frequently lifting and carrying even greater weights than before, *i.e.*, over 50 pounds. (Tr. 331). Neither Dr. Gerke's reports nor the other evidence of record explain the basis for the changes in Dr. Gerke's opinions over the relevant time period, and there is no indication in the record that plaintiff's physical condition deteriorated. There is no evidence of contemporaneous physical examinations or clinical or laboratory findings supporting Dr. Gerke's more restrictive opinion of plaintiff's physical functional capacity.

In addition, Dr. Gerke's more extreme physical limitations lack objective or clinical support. Plaintiff has not cited to any clinical or objective evidence supporting Dr. Gerke's limitations on walking, standing or sitting. Rather, those limitations appear to be based on plaintiff's self-reports of fatigue. (Tr. 261, "[Plaintiff's] activity limitations are based on her extreme fatigue and her anxiety."). Dr. Gerke attributed plaintiff's fatigue to plaintiff's medications (Tr. 256–June 2006; Tr. 261–Aug. 2006; Tr. 332–April 2008), depression (Tr. 252–June 2006), and Tourette's syndrome (Tr. 252–June 2006). Dr. Gerke opined that plaintiff's "pain, fatigue or other symptoms" would "constantly" interfere with attention and concentration and preclude even low stress work. (Tr. 257–June 2006, Tr. 333–April 2008). He attributed

13

these limitations to plaintiff's Tourette's syndrome "acting up" (Tr. 333) and other unknown reasons set forth in his report.[7] (Tr. 257). Yet, plaintiff has not cited to any medical records to support a finding that extreme fatigue would prevent her from sitting for even one hour[8] or prevent her from standing for more than one hour in eight hour workday as Dr. Gerke most recently opined.

In addition, Dr. Gerke stated that plaintiff's Tourette's syndrome causes an inability to sleep (Tr. 252) and that plaintiff is being treated by a neurologist. However, as the ALJ noted, there are no records or reports from a neurologist in the record which would support Dr. Gerke's conclusion.

Furthermore, to the extent Dr. Gerke opined that depression caused disabling fatigue, that opinion conflicts with Dr. Sexton's opinion that despite her mental impairments, plaintiff was capable of simple, repetitive-type tasks (Tr. 282) and with Dr. Waissbluth's opinion that plaintiff was capable of light work activity as long as she had ready access to a restroom once a shift for 10 minutes at a time. (Tr. 201-05). The ALJ reasonably discounted Dr. Gerke's more extreme limitations based on the lack of clinical and objective findings in the record and inconsistencies between his opinion and the other record evidence.[9]

Plaintiff also argues that the ALJ erred in determining Dr. Dahar was not a treating source and in not properly weighing his opinion. Contrary to plaintiff's argument, Dr. Dahar did not qualify as a treating physician at the time he rendered his opinion. "A physician qualifies as a

---

[7]This portion of the report is illegible.

[8]In fact, plaintiff testified that she could sit with no problems. (Tr. 38).

[9]Contrary to plaintiff's argument, the ALJ did acknowledge Dr. Gerke had a "lengthy patient relationship" with plaintiff and considered this regulatory factor in his decision. (Tr. 23).

14

treating source if the claimant sees [him] 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502). At the time Dr. Dahar submitted his report, he had examined plaintiff on only one occasion. Although Dr. Dahar subsequently treated plaintiff for a short while thereafter, his opinion on plaintiff's functionality was based on this single examination and was not entitled to the special weight afforded to a physician who has an ongoing treatment relationship with a patient and a longitudinal perspective on a patient's functioning as contemplated by the Social Security regulations. *See Smith,* 482 F.3d at 876. Consequently, the ALJ was not required to give Dr. Dahar's opinion controlling weight; rather, he was simply required to determine how much weight to afford this opinion based on the factors enumerated in 20 C.F.R. § 404.1527(d). *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010) (ALJ not required to give "good reasons" for discounting opinion of one-time examining medical source but should generally give more weight to examining sources than to non-examining ones).

In determining how much weight to give Dr. Dahar's opinion, the ALJ was required to look at the nature and length of the treatment relationship, the evidence supporting his opinion, and the consistency of his opinion with the record as a whole. *Ealy*, 594 F.3d at 514. The ALJ's decision to afford less than significant weight to Dr. Dahar's opinion satisfies the requirements of 20 C.F.R. § 404.1527(d) and *Ealy*.

First, in giving Dr. Dahar's opinion less than significant weight, the ALJ properly noted that Dr. Dahar was a one-time examining physician at the time he completed his psychiatric questionnaire and his findings were based in part on plaintiff's subjective report of her

15

symptoms. The ALJ also found that Dr. Dahar's assessment of moderate limitations as to completing a workweek due to psychological symptoms and otherwise mild limitations was generally consistent with Dr. Gerke's opinion of limited stress tolerance and reduced concentration and attention, and with Dr. Sexton's findings of an ability to sustain simple work tasks despite decreased stress tolerance. (Tr. 23). The ALJ further concluded that Dr. Dahar's GAF rating was inconsistent with his functional assessment and the overall record. *Id.*

The ALJ also properly noted the nature of Dr. Dahar's treatment relationship with plaintiff and the consistency of his opinion with those of Dr. Gerke and Dr. Sexton. Dr. Dahar's functional assessment showed "no" to only "mild"[10] limitations of mental functioning in all areas with the exception of "moderate"[11] limitations in only one area of functioning – her ability to complete a normal workweek without interruptions due to psychologically based symptoms and to perform at a consistent pace. (Tr. 322). Although Dr. Dahar believed plaintiff has "significant" limitations in her ability to complete a normal workweek and perform at a consistent pace as she contends (Doc. 12 at 13), Dr. Dahar did not totally preclude plaintiff's ability in this area of functioning and his assessment does not indicate an inability to perform all work activity from a mental standpoint. Moreover, this assessment is consistent with that of Dr. Sexton, the one-time consultative psychologist, who opined that plaintiff was capable of performing simple repetitive-type tasks despite her "fair" ability to tolerate the daily stress and pressures of a work environment. (Tr. 282).

---

[10]A "mild" limitation is defined as one that "does not significantly affect the individual's ability to perform the activity." (Tr. 321).

[11]A "moderate" limitation is defined as one that "significantly affects *but does not totally preclude* the individual's ability to perform the activity." (Tr. 321, emphasis added).

Plaintiff also contends the ALJ ignored Dr. Dahar's other findings that she experienced episodes of deterioration or decompensation in work or work-like settings that cause her to withdraw from that situation and/or experience exacerbation of signs and symptoms when she feels anxious; that she was incapable of even low stress work; and that she would likely be absent from work more than three times per month. (Doc. 12 at 13, citing 324-326). However, as the ALJ reasonably determined in weighing Dr. Dahar's opinion, a review of these findings by Dr. Dahar indicates Dr. Dahar relied heavily on plaintiff's subjective reports of her symptoms, which the ALJ ultimately determined were not credible. With regard to his opinion on episodes of decompensation[12], Dr. Dahar stated this occurs "when she feels anxious and it may get out of her control, she reports withdrawing to a bathroom, e.g., to avoid embarrassment." (Tr. 324). In explanation for his opinion that plaintiff is "incapable of even 'low stress'" work, Dr. Dahar stated, "Went over this form with client as patient fairly new to our practice. Her reports plus our diagnoses and therapy findings were used to rate." (Tr. 325). Other notations throughout Dr. Dahar's report show that his "clinical" findings were actually based on plaintiff's self "reports." (Tr. 320). The ALJ was free to consider that Dr. Dahar's opinions on decompensation, stress, and work absences were inconsistent with his findings of mild and moderate limitations and were not based on actual clinical findings, but rather on plaintiff's subjective reports. *See Smith*, 482 F.3d at 877. The ALJ's finding in this regard is supported by substantial evidence and should not be disturbed by the Court. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See*

---

[12]The Social Security regulations define episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). "The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

*also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Court notes that even where the evidence arguably supports the conclusion the plaintiff seeks, the reviewing court must uphold the decision of the ALJ if the evidence could reasonably support the conclusions reached by the ALJ. *Her v. Comm'r v. Soc. Sec.,* 203 F.3d 388, 389–90 (6th Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The ALJ's decision weighing the opinions of Drs. Gerke and Dahar is substantially supported by the record and should be upheld by the Court.

**2. The ALJ's credibility finding is supported by substantial evidence**.

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by the record and "failed to provide any analysis of [plaintiff's] testimony or why her testimony was found not to be credible." (Doc. 12 at 16). Plaintiff argues she provided testimony of her symptoms and limitations that was consistent with the record evidence. *Id.* at 17.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

Here, the ALJ determined that plaintiff's statements about her limitations lacked credibility. (Tr. 23). Contrary to plaintiff's argument, the ALJ documented plaintiff's testimony about her conditions, her activities, and her limitations (Tr. 19-20) and his reasons for discounting those statements. (Tr. 23). The ALJ noted that plaintiff's activities of daily living were not incompatible with the ability to perform a range of light work with restrictions. (Tr. 23). The ALJ noted plaintiff performed routine tasks such as self care, some cooking, cleaning, laundry, and grocery shopping. *Id.* The ALJ also properly considered the nature of plaintiff's impairments, her lack of extensive mental health treatment, the conservative treatment plaintiff received in connection with her impairments, and the lack of significant clinical and objective findings to support her allegations of disabling back pain and gastrointestinal condition.[13] *Id.* It was reasonable for the ALJ to infer from this evidence that plaintiff's pain and limitations are not as disabling as she alleged. Where, as here, the ALJ's credibility determination is supported by substantial evidence, the Court may not re-examine whether the record could support a contrary finding. *See Casey v. Sec. of HHS,* 987 F.2d 1230, 1233 (6th Cir. 1993). Because the ALJ's credibility determination is supported by substantial evidence, this Court must defer to it. *See Buxton,* 246 F.3d at 772. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's reliance on vocational testimony to meet his step five burden is supported by substantial evidence.

Lastly, plaintiff argues the ALJ relied on flawed vocational testimony as the hypothetical questions presented to the VE failed to properly reflect plaintiff's limitations as reflected in the reports of Drs. Gerke and Dahar and her own testimony. Plaintiff's third claim of error is merely

---

[13] For example, while plaintiff testified she had pain from irritable bowel syndrome that at times felt like she was going to have a heart attack (Tr. 34), her treating physician Dr. Waissbluth reported that her GI condition was not disabling. (Tr. 199, 205).

a reformulation of her challenges to the ALJ's RFC finding, the weighing of the medical evidence, and credibility finding. For the reasons set forth above with respect to the first and second assignments of error, the ALJ's decision in these respects is substantially supported by the record. Therefore, plaintiff's third assignment of error is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 2/14/12

Karen L. Litkovitz
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PAULA KAY MEREDITH,                          Case No. 1:10-cv-815
    Plaintiff                            Dlott, J.
                                                 Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

21